UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ROBERT WILLIAMS, SR. ) | |
| and ELLEN M. WILLIAMS, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 07-CV-0255-CVE-FHM |
| ) | |
| CSC CREDIT SERVICES, INC., ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Now before the Court is Defendant CSC Credit Services, Inc.'s Partial Motion to Dismiss and Brief in Support (Dkt. # 6). Defendant does not move for dismissal of all of plaintiffs' claims, but it specifically requests that the Court dismiss plaintiffs' claim under the Oklahoma Consumer Protection Act, OKLA. STAT. tit. 15, § 751 et seq. ("OCPA").

**I.**

According to the Complaint, on June 16, 2006, plaintiffs Robert Williams, Sr. and Ellen Williams applied for a loan from the Tulsa Teachers Credit Union ("TTCU"). TTCU denied the loan application based on an unpaid collection and judgment. Dkt. # 2, Ex. 2.[1] The denial letter stated that TTCU's adverse credit decision "was based in whole or in part on information obtained in a report from a consumer reporting agency," and TTCU advised plaintiffs that it obtained a credit

---

[1] The Court recognizes that evidentiary materials outside of the complaint are ordinarily not considered when ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6). However, the denial letter from TTCU was attached to the complaint and "[e]xhibits attached to a complaint are properly treated as part of the pleadings for purposes of ruling on a motion to dismiss." Tal v. Hogan, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006).

report from CSC Credit Services, Inc. ("CSC").  Id.  Plaintiffs allege that they do not owe any monetary judgment, and the information provided by CSC was erroneous.

Plaintiffs state that they contacted CSC three times in an attempt to persuade CSC to remove the inaccurate information from Robert Williams, Sr.'s credit report, but CSC refused to remove the unpaid judgment from his credit report.  Both plaintiffs continued to apply for a loan from other lenders.  They claim that E-LOAN offered plaintiffs a loan at an interest rate of 9.29 %, and this was the lowest interest rate plaintiffs could obtain from any lender.  Plaintiffs state that they could have obtained a loan with a significantly lower interest rate from TTCU if CSC had not negligently and willfully caused incorrect information to appear in Robert Williams, Sr.'s credit report.  Based on these factual allegations, plaintiffs filed this lawsuit against CSC alleging claims under the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA"), the OCPA, as well as a common law negligence claim under Oklahoma law.

## II.

When reviewing a motion to dismiss under Rule 12(b)(6), a court must construe the allegations of the complaint as true and view the allegations in the light most favorable to the nonmoving party.  Moffett v. Halliburton Energy Services, Inc., 291 F.3d 1227, 1231 (10th Cir. 2002).  A Rule 12(b)(6) motion "should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Sutton v. Utah State School for the Deaf & Blind, 173 F.3d 1226, 1236 (10th Cir. 1999).

## III.

The OCPA was enacted to protect consumers from unfair and deceptive trade practices and, unlike the Federal Trade Commission Act, it provides a private right of action for aggrieved

consumers.  Patterson v. Beall, 19 P.3d 839, 846 (Okla. 2000).  In order to state a claim under the OCPA, a plaintiff must allege four elements: (1) the defendant engaged in an unlawful practice under OKLA. STAT. tit. 15, § 753; (2) the unlawful practice occurred in the course of the defendant's business operations; (3) the plaintiff, in his capacity as a consumer, was injured; and (4) the defendant's unlawful practice caused the plaintiff's injury.  Id.  However, the OCPA expressly excludes certain claims from its coverage, as OKLA. STAT. tit. 15, § 754 provides that "[n]othing in this act shall apply to . . . [a]ctions or transactions regulated under laws administered by the Corporation Commission or any other regulatory body acting under statutory authority of this state or the United States . . . ."  Id.  Defendant argues that plaintiffs' claim is exempt from the OCPA under section 754, because the Federal Trade Commission ("FTC") has administrative authority to regulate the conduct alleged in plaintiffs' complaint under the FCRA.

Plaintiffs respond that their allegations go beyond mere "mechanical errors that would fall within the ambit of the [FCRA]," because they have alleged that CSC engaged in intentional and malicious conduct going well beyond the scope of the FCRA.  The FCRA was enacted "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit . . . in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information."  15 U.S.C. § 1681(b); see also Matthiesen v. Banc One Mortg. Corp., 173 F.3d 1242, 1245 (10th Cir. 1999). The FCRA places obligations on three types of entities: (1) consumer reporting agencies; (2) users of consumer reports; and (3) furnishers of information to consumer reporting agencies.  Whisenant v. First Nat'l Bank & Trust Co., 258 F. Supp. 2d 1312, 1316 (N.D. Okla. 2003).  Plaintiffs allege that CSC, as a consumer reporting agency, violated the FCRA by including inaccurate information in

Robert Williams, Sr.'s credit report and, further, that CSC willfully refused to correct any errors.[2] In support of their FCRA claim, plaintiffs allege that CSC provided TTCU with a copy of Robert Williams, Sr's credit report, and the report erroneously stated that there was an unpaid collection and judgment. Plaintiffs assert that they contacted CSC about the alleged error, but CSC repeatedly and willfully refused to correct Robert Williams, Sr.'s credit report. Plaintiffs simply reallege the same facts in support of their OCPA claim.[3] Based on a plain reading of the Complaint, the Court finds that conduct giving rise to plaintiffs' FCRA claim is the same conduct relied on in the OCPA claim.

Both plaintiffs and defendant rely on Estate of Hicks v. Urban East, Inc., 92 P.3d 88 (Okla. 2004), and Brice v. AT & T Communications, Inc., 32 P.3d 885 (Okla. Civ. App. 2001), to support their arguments. In Hicks, the Oklahoma Supreme Court held that the Nursing Home Care Act, OKLA. STAT. tit. 63, § 1-1900.1 et seq., regulated the care and treatment of nursing home residents, and claims that implicated nursing home care were exempt from the OCPA under section 754. Hicks, 92 P.3d at 93-94. The court stated:

> The "action or transaction" in the case at bar involves the services and level of care alleged to have been wrongfully represented to plaintiff's decedent. As such, the action or transaction is regulated under laws administered by the Oklahoma Department of Health, as mandated by the Nursing Home Care Act. This places the

---

[2] In order to include a state law claim for negligence against defendant, plaintiffs were required to allege that defendant engaged in malicious or willful conduct. See 15 U.S.C. § 1681h(e) ("Except as provided in sections 1681n and 1681o of this title, no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency . . . except as to false information furnished with malice or willful intent to injure such consumer.").

[3] Plaintiffs include one additional allegation related to damages as part of their OCPA claim, but the underlying conduct is identical to plaintiffs' FCRA claim. See Dkt. # 2, at 3-4.

>action or transaction squarely withing the exemption to the Oklahoma Consumer
>Protection Act found at § 754(2).

Id. at 95.  In Brice, the plaintiff attempted to litigate a billing dispute against AT&T Communications, Inc. ("AT&T") under the OCPA, but the Oklahoma Court of Civil Appeals held that the Oklahoma Corporation Commission ("OCC") had primary jurisdiction to hear this claim. Brice, 32 P.3d at 887.  Even though the plaintiff described AT&T's actions as a deceptive or unfair trade practice, the underlying claim was simply a billing dispute that had to be presented to the OCC. Id.  In both Hicks and Brice, the courts found that the plaintiff's claims fell within section 754(2) and the claims were exempt from coverage under the OCPA.

Plaintiffs attempt to distinguish both cases.  They argue that Hicks simply prevented a plaintiff from using the OCPA to state a claim for misrepresentation of the quality of nursing care, but Hicks did not create a general rule that a plaintiff could never use the OCPA to challenge the quality of nursing home care.  Plaintiffs claim that Brice was decided solely on the ground of primary jurisdiction.  Plaintiffs also allege that they had no duty to file a claim with the FTC in this case and, therefore, the FTC did not have primary jurisdiction over plaintiffs' claim and Brice does not apply.  Plaintiffs' interpretation of existing case law is exceedingly narrow, and the Court finds plaintiffs' arguments unpersuasive.  In Hicks, the plaintiff did not file an administrative claim with the Oklahoma Department of Health nor did he have a duty to do so, but the Oklahoma Supreme Court still found that the plaintiff's claims was excluded from the OCPA.  See Hicks, 92 P.3d at 93-95. Likewise, plaintiffs' argument that Brice limited the scope of section 754(2) to cases when the plaintiff's claim fell within the primary jurisdiction of an administrative agency is not supported by Hicks, because primary jurisdiction was not a relevant issue in that case.  Even assuming that plaintiffs are correct that Brice was decided on the ground of primary jurisdiction instead of section

754(2), the Court is bound to follow the Oklahoma Supreme Court's interpretation of section 754(2) as stated in Hicks.

Other cases interpreting section 754(2) suggest that the Court should compare the purposes of the OCPA and the allegedly conflicting regulatory scheme to determine if plaintiffs' claim is exempt from coverage under the OCPA. In re General Motors Corp., 2005 WL 1924335, *3 (W.D. Okla. 2005) (considering regulatory purpose of the Oklahoma Motor Vehicle Commission when it concluded that the plaintiff's claim for false advertising was covered by the OCPA); Conatzer v. American Mercury Ins. Co., Inc., 15 P.3d 1252, 1255 (Okla. Civ. App. 2000) (finding that the plaintiff's claim against an insurance company for reselling a vehicle following an accident was not within scope of the Oklahoma Insurance Code, and plaintiff could proceed with OCPA claim). In this case, plaintiffs allege that CSC inaccurately reported Robert Williams, Sr.'s credit information, and that CSC willfully refused to correct his credit report. The purpose of the FCRA is to "ensure accuracy and fairness in credit reporting and to require that such reporting is confidential, accurate, relevant, and proper." Matthiesen, 173 F.3d at 1245. Congress has given the FTC administrative authority to enforce the FCRA. 15 U.S.C. § 1681s. The underlying "action or transaction," CSC's alleged error when reporting plaintiffs' credit, falls squarely within the scope of the FCRA, even to the extent that plaintiffs allege that CSC's conduct was malicious and willful. See 15 U.S.C. § 1681n ("Any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer . . ." for damages as specified in the statute); Casella v. Equifax Credit Information Serv., 56 F.3d 469, 473 (2d Cir. 1995) ("The FCRA creates a private right of action against credit reporting agencies for the negligent . . . or willful . . . violation of any duty imposed under the statute."). Section 754 of the OCPA provides

6

that "[n]othing in this act shall apply to . . . [a]ctions or transactions regulated under laws administered by the Corporation Commission or any other regulatory body acting under statutory authority of this state or the United States . . . ." OKLA. STAT. tit. 15, § 754(2). By federal statute, the FTC has the authority to enforce the FCRA, and the Court has not found a meaningful difference between plaintiffs' FCRA and OCPA claims. The stated purpose of the FCRA was to provide a remedy for alleged errors in credit reporting, and plaintiffs' claim is clearly within the scope of the FCRA. Therefore, plaintiffs' claims are exempt from coverage under the OCPA, and plaintiffs can not pursue relief under the OCPA as part of this case.

**IT IS THEREFORE ORDERED** that Defendant CSC Credit Services, Inc.'s Partial Motion to Dismiss and Brief in Support (Dkt. # 6) is **granted**, and plaintiffs' OCPA claim (Count II of the complaint) is **dismissed**.

**DATED** this 29th day of June, 2007.

_____
CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT